JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michael Farrington

**(b)** County of Residence of First Listed Plaintiff **Delaware County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Harry J. Oxman, Oxman Goodstadt Kuritz, PC
1015 Chestnut Street, Suite 1500, Philadelphia, PA 19107
(215) 665-9999

## DEFENDANTS

County of Bucks, PA, Bucks County Correctional Facility, Unknown Correctional Officers of Bucks Co. Jail System, PrimeCare Medical, Inc., (See attached Addendum listing all Defendants)

County of Residence of First Listed Defendant **Bucks County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☒ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1367

Brief description of cause:
Personal Injury and Medical Malpractice

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
12/29/2017

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ADDENDUM TO COVER SHEET

**Complete list of Defendants**:

1.  County of Bucks, PA
    55 East Court Street
    Doylestown, Pa 18901

2.  Bucks County Correctional Facility
    1730 South Easton Road
    Doylestown, PA 18901

3.  Unknown Correctional Officers of
    Bucks County Jail System
    1730 South Easton Road
    Doylestown, PA 18901

4.  Primecare Medical, Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

5.  Victoria Gessner, M.D.
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

6.  Ken Wioczewski, D.O.
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

7.  Brittanie Gradinette, PA-C
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

8.  Unknown Medical Providers Employed
    By Primecare Medical, Inc.
    c/o Prime Care Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

9.  Doylestown Hospital, Inc.
    595 W. State Street
    Doylestown, PA 18901

10. Thomas P. Dienna, D.O.
    c/o Doylestown Hospital
    595 W. State Street
    Doylestown, PA 18901

11. Unknown Medical Providers of
    Doylestown Hospital, Inc.
    c/o Doylestown Hospital
    595 W. State Street
    Doylestown, PA 18901

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  29 Schuyler Road, Springfield, Pennsylvania 19064

Address of Defendant: 55 E. Court Street, Doylestown, PA 18901, 1730 S. Easton Road, Doylestown, PA 18901, 3940 Locust Lane, Harrisburg, PA 17109, and 595 W. State Street, Doylestown, PA 18901

Place of Accident, Incident or Transaction:_____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))      Yes☐  No ☒

Does this case involve multidistrict litigation possibilities?         Yes☐  No ☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
        Yes☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
        Yes☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
        Yes☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
        Yes☐  No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases*:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,   Harry J. Oxman, Esquire   , counsel of record do hereby certify:
  ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
  ☐ Relief other than monetary damages is sought.

DATE: __12/29/2017__         _____       __13316__
                                Attorney-at-Law                 Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.
DATE: __05/10/2016__         _____       __13316__
                                Attorney-at-Law                 Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Michael Farrington | : | CIVIL ACTION |
| | : | |
| vs. | : | No. |
| County of Bucks, PA, Bucks County Correctional Facility, | : | |
| Unknown Correctional Officers of Bucks County Jail System, | : | |
| Primecare Medical, Inc., Victoria Gessner, M.D., | : | |
| Ken Wioczewski, D.O., Brittanie Gradinette, PA-C, | : | |
| Unknown Medical Providers Employed By PrimeCare Medical, | : | |
| Inc., Doylestown Hospital, Inc.,  Thomas P. Dienna, D.O. and | : | |
| Unknown Medical Providers of Doylestown Hospital, Inc. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.        ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (x )

| | | |
|---|---|---|
| 12/29/2017 | Harry J. Oxman, Esquire | Michael Farrington |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 665-9999 | (215) 569-8811 | Oxmanh@ogklawyers.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

OXMAN GOODSTADT KURITZ PC                                    Attorney for Plaintiff
BY: HARRY OXMAN, ESQUIRE
IDENTIFICATION NO: 13116
1015 Chestnut St., Ste 1500
Philadelphia, PA 19107
215-665-9999

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL FARRINGTON                            :
29 Schuyler Road                              :
Springfield, PA 19064,                        :
                                              :
       Plaintiff,                         :
   vs.                                      :
                                              :
COUNTY OF BUCKS, PA                           :
55 East Court Street                          :
Doylestown, Pa 18901                          :
   and                                     :
BUCKS COUNTY CORRECTIONAL FACILITY            :
1730 South Easton Road                        :
Doylestown, PA 18901                          :
   and                                     :
UNKNOWN CORRECTIONAL OFFICERS OF              :
BUCKS COUNTY JAIL SYSTEM                      :
1730 South Easton Road                        :
Doylestown, PA 18901                          :
   and                                     :
PRIMECARE MEDICAL, INC.                       :
3940 Locust Lane                              :
Harrisburg, PA 17109,                         :
   and                                     :
VICTORIA GESSNER, M.D. .                      :
c/o PrimeCare Medical Inc.                    :
3940 Locust Lane                              :
Harrisburg, PA 17109                          :
   and                                     :
KEN WIOCZEWSKI, D.O.                          :
c/o PrimeCare Medical Inc.                    :
3940 Locust Lane                              :
Harrisburg, PA 17109                          :
   and                                     :
BRITTANIE GRADINETTE, PA-C                    :
c/o PrimeCare Medical Inc.                    :
3940 Locust Lane                              :
Harrisburg, PA 17109                          :
   and                                     :
UNKNOWN MEDICAL PROVIDERS EMPLOYED            :
BY PRIMECARE MEDICAL, INC.                    :

1

c/o Prime Care Medical Inc.                              :
3940 Locust Lane                                         :
Harrisburg, PA 17109                                     :
    and                              :
**DOYLESTOWN HOSPITAL, INC.**                            :
595 W State St, Doylestown                               :
PA 18901                                                 :
    and                              :
**THOMAS P. DIENNA, D.O.**                               :
c/o Doylestown Hospital                                  :
595 W. State Street                                      :
Doylestown, PA 18901                                     :
    and                              :
**UNKNOWN MEDICAL PROVIDERS OF**                         :
**DOYLESTOWN HOSPITAL, INC.**                            :
c/o Doylestown Hospital                                  :
595 W. State Street                                      :
Doylestown, PA 18901                                     :
        Defendants.       :

## **COMPLAINT**

Plaintiff, Michael Farrington, by way of this Complaint is Civil Action against Defendants,

states:

## **PARTIES**

1.     Plaintiff, Michael Farrington, is a citizen of the State of Pennsylvania, residing at

the above-mentioned address. Hereinafter, Plaintiff, Michael Farrington shall be referred to as

"Farrington."

2.     Defendant, County of Bucks, Pennsylvania, was and still is a domestic

governmental entity duly organized and existing under and by the virtue of the laws of the state

of Pennsylvania, with a principal place of business located at the above-mentioned address.

Hereinafter, County of Bucks, Pennsylvania shall be referred to as "County."

3.     At all times relevant hereto, "County" operated the Bucks County Jail System,

consisting of the Bucks County Correctional Facility at the above mentioned address.

2

Hereinafter, Defendant Bucks County Correctional Facility shall be referred to as "Jail."

       4.     Defendant, Unknown Officers of "County," were at all times relevant hereto employees of "County" working at "Jail" in the capacity of Correctional Officers. Hereinafter, Defendants Unknown Correction Officers shall be referred to as "Unknown Correctional Officers."

       5.     Defendant, PrimeCare Medical, Inc., was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, with a principal place of business located at the above-mentioned address. Hereinafter, Defendant, PrimeCare Medical, Inc., shall be referred to as "PrimeCare." At all times relevant hereto, PrimeCare provided medical services to inmates at "Jail." . "Farrington" is pursuing a professional liability claim against "PrimeCare."

       6.     Defendant, Victoria Gessner, M.D., is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and at all times relevant hereto, was an employee of "PrimeCare," providing medical services to "Jail" to inmates including "Farrington." Hereinafter, Defendant, Victoria Gessner, M.D., shall be referred to as "Gessner." "Gessner's" place of business is at the above-mentioned address. "Farrington" is pursuing a professional liability claim against "Gessner."

       7.     Defendant, Ken Wioczewski, D.O., is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and at all times relevant hereto, was an employee of "PrimeCare," providing medical services to "Jail" to inmates including "Farrington." Hereinafter, Defendant, Ken Wioczewski, D.O., shall be referred to as "Wioczewski." "Wioczewski's" place of business is at the above-mentioned address. "Farrington" is pursuing a professional liability

3

claim against "Wioczewski."

8.      Defendant, Brittanie Gradinette, PA-C, was a liscensed provided of medical services and at all times relevant hereto, was an employee of "PrimeCare" providing medical services at "Jail" to inmates, including "Farrington." Hereinafter, Defendant, Brittanie Gradinette, PA-C, shall be referred to as "Gradinette." "Gradinette's" place of business is at the above-mentioned address.  "Farrington" is pursuing a professional liability claim against "Gradinette."

9.      Defendants, Unknown Medical Providers Employed by PrimeCare Medical, Inc., at all times relevant hereto, were employees of "PrimeCare," providing medical services at "Jail" to inmates, including "Farrington." Hereinafter, Defendants, "Unknown Medical Providers Employed by PrimeCare Medical, Inc., shall be referred to as "Unknown Medical Providers of PrimeCare." "Unknown Medical Providers of PrimeCare's'" place of business is at the above-mentioned address. "Farrington" is pursuing a professional liability claim against "Unknown Medical Providers of PrimeCare."

10.      Defendant Doylestown Hospital, Inc., is a hospital facility providing impatient and outpatient medical care at its location at the above-mentioned address. Hereinafter Doylestown Hospital, Inc. Shall be referred to as "Hospital." "Farrington" is pursuing a professional liability claim against "Hospital."

11.      Defendant Thomas P. DiEnna, D.O, is an adult individual licensed to practice medicine in the Commonwealth of Pennsylvania specializing in emergency medicine with an office located at the above listed address. Hereinafter, Defendant, Thomas P. DiEnna, shall be referred to as "DiEnna." "Farrington" is pursuing a professional liability claim against "DiEnna."

4

12.     Defendants, Unknown Medical Providers of Doylestown Hospital, Inc., during the treatment of "Farrington" on December 1, 2015, provided physician medical care to "Farrington" and are licensed to practice medicine in the Commonwealth of Pennsylvania with offices located at the above-mentioned address. Hereinafter, Unknown Medical Providers of Doylestown Hospital, Inc., shall be referred to as "Unknown Providers of Hospital." "Farrington' is asserting a professional liability claim against "Unknown Medical Providers of Hospital."

13.     Defendants, "Unknown Correctional Officers of Jail," at all times relevant to the causes of action of "Farrington," were the agents, servants, workmen, employee and/or ostensible agent of "County" and "Jail," acting within the course and scope of their employment and on the business of "County" and "Jail."

14.     Defendants, "Gessner," "Wioczewski," "Gradinette" and "Unknown Medical Providers of PrimeCare," at all times relevant to the causes of action of "Farrington," were the agents, servants, workmen, employee and/or ostensible agent of "PrimeCare," acting within the course and scope of their employment and on the business of "PrimeCare."

15.     Defendants, "DiEnna," and "Unknown Medical Providers of Hospital," at all times relevant to the causes of action of "Farrington," were the agents, servants, workmen, employee and/or ostensible agent of "Hospital," acting within the course and scope of their employment and on the business of "Hospital."

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this lawsuit because the actions arises under the Laws and Constitutions of the United States, in particular the Fourteenth Amendment and 42

5

U.S.C.A. §1983. "Farrington," was deprived of his rights not to be subjected to cruel and unusual punishment while being subjected to these violations he suffered and sustained severe and permanent injuries to his person.

17.     This Court has supplemental jurisdiction under 28 U.S.C. §1367, over "Farrington's" claims arising under the state law, including but not limited to violations of "Farrington's" Constitutional rights for cruel and unusual punishment, willful misconduct, deliberate indifference, and medical negligence because these claims are so related to the claims within the Court's original jurisdiction that they form the same case or controversy under Article 3 of the United States Constitution.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the claims at issue arose in this judicial district.

### GENERAL ALLEGATIONS AGAINST DEFENDANTS

19.     The above paragraphs are repeated and incorporated herein by reference as if set forth at length.

20.     On October 16, 2015, "Farrington" appeared at "Jail" as an inmate and underwent a Health Assessment. During the Health Assessment, "Farrington" complained of pain in his left knee, which he indicated had started two days prior. "Farrington" stated that he was unaware of the cause and did not recall injuring his left knee. "Farrington" was prescribed Motrin for his left knee pain.

21.     During "Farrington's" Health Assessment, it was also noted that he was an IV drug user, had a previous history of endocarditis, had scars from episodes of cellulitis, as well as,

6

a previous MRSA infection and abscess to his right hand during a prior incarceration at "Jail" on April 11, 2015.

22. On October 18, 2015, Farrington was examined by Linda Ogden, RN for complaints of throbbing left knee pain which, had been present for two days prior to his incarceration. Upon examination, swelling, tenderness and a decreased range of motion were noted in the area of the left knee and "Farrington" stated that the pain worsened with walking. Edema was noted above, lateral and medial to his left knee. As a result, "Farrington" was prescribed two tabs of Ibuprofen 200 mg to be taken twice a day for five days. The examination was reviewed and approved by "Gessner" on October 19, 2015. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

23. On October 24, 2015, "Farrington" was found on the floor in a hallway where he had fallen as a result of his left knee giving away. Subsequently, he was transferred by wheelchair to the infirmary where he was examined by Linda Campbell, RN. "Farrington" was described as being diaphoretic, face reddened, and his hands were pale and cold. He described his left knee pain as being sharp, throbbing and radiating to the front and both sides of his left knee, as well as, to his anterior and posterior thigh. Again, "Farrington" denied any trauma inducing event and stated his left knee and thigh pain had been persistent since October 14, 2015. Upon physical examination, "Farrington's" knee demonstrated swelling and tenderness to palpation. As a result, "Farrington" was prescribed two tabs of Ibuprophen 200 mg to be taken twice a day for five days, as well as, ordered to ice the area in twenty minute durations as needed per night. The examination was reviewed and approved by "Gessner" on October 28, 2015. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

7

24.    On or about November 2, 2015, "Farrington" was examined by Mark DiCicco, RN, for continued pain to his left knee. During the physical exam, "Farrington" exhibited pain upon palpation of the left knee area and pain that was produced and exacerbated upon extension of the left leg.  As a result, "Farrington" was prescribed two tabs of Ibuprophen 200 mg to be taken twice a day for five days. The examination was reviewed and approved by "Gessner" on November 4, 2015. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

25.    On November 6, 2015, "Farrington" was examined by Lee Grabosky, RN for throbbing knee pain which he had been experiencing now for over three weeks. It was noted that "Farrington's" pain increased when he tried to extend his left leg and as a result, he was prescribed two tabs of Ibuprophen 200 mg to be taken twice a day for five days. The examination was reviewed and approved by "Wioczewski" on November 9, 2015. He did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

26.    On November 13, 2015, "Farrington" was examined by Lori J. Hadley, RN for throbbing pain in his left knee which, increased with movement. This pain was attributed as being the same pain he had been experiencing for approximately one month. Upon examination, he exhibited tenderness in the area of his left knee.  "Farrington" was prescribed two tabs of Ibuprophen 200 mg to be taken twice a day for five days. The examination was reviewed and approved by "Wioczewski" on November 16, 2015. He did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

8

27.     On November 18, 2015, Chris Preston, RN examined "Farrington" for complaints of left knee pain which "Farrington" described as throbbing and radiating from his knee to his thigh, which was worsened by ambulating, as well as, lying down. Upon examination, tenderness was noted and "Farrington" was prescribed Acetaminophen 325 mg to be taken twice a day for five days. The examination was reviewed and approved by "Gessner" on November 20, 2015. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

28.     On November 23, 2015, "Farrington" was on a work release program with the "Jail" and refused a medical appointment which, would have taken him off of work release and required him to spend the remainder of his incarceration at the main "Jail." As a result, "Farrington" declined treatment at the main "Jail."

29.     On November 29, 2015, while on work duty, it was noticed by "Unknown Correctional Officers" and "Unknown Medical Providers of PrimeCare" that "Farrington" was limping on his left leg. No further action was taken by "Unknown Correctional Officers" or "Unknown Medical Providers of PrimeCare" to medically evaluate "Farrington" upon the observation of his limp.

30.     On or about December 1, 2015, "Farrington" fell when walking to a "Jail" bus when his left knee gave out. As a result,"Farrington" was taken by EMS to "Hospital," where he was treated by " DiEnna" and other "Unknown Medical Providers at Hospital." "Farrington" told "DiEnna" and "Unknown Medical Providers of Hospital" that he had knee pain and swelling, which was radiating to his thigh for approximately two months. "DiEnna" and "Unknown Medical Providers of Hospital" were also made aware of "Farrington's" prior IV drug use,

9

history of MRSA, cellulitis, and endocarditis. "DiEnna" ordered an ultrasound of the veins of "Farrington's" left lower extremity, as well as, x-rays of the left knee. The ultrasound and x-rays were interpreted as negative. "Farrington" was subsequently discharged by "DiEnna" with a diagnosis of musculoskeletal pain and prescribed a knee immobilizer, crutches and the NSAID, Naproxen, and told to seek outpatient orthopedic follow-up if his pain persisted. He did not order any laboratory studies, a MRI, a CT Scan, or request an orthopedic consult.

31.     As a result of "Farrington's" continued left knee and thigh pain, "Jail" placed him in Acute Medical Watch Segregation on December 3, 2015.

32.     On or about December 4, 2015, "Farrington" made a complaint to "Gessner" where he stated that he knew something was seriously wrong with his leg and requested to be taken to orthopedics. "Gessner" ignored "Farrington's" request to see an orthopedic specialist and diagnosed "Farrington's" pain as musculoskeletal in nature. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

33.     On or about December 10, 2015, "Farrington" made an inmate request to "Unknown Correctional Officers" and "Unknown Medical Providers of PrimeCare." In his request, "Farrington" wrote:

> I am still in pain. Really just need to figure something out. Went to
> ER 11 days ago and Dr. said if it doesn't get better in a week to either
> go back or see Ortho. Please! I am literally begging you at this point
> for some help. Been going on for nearly 2 months. No sign of it
> getting better, I have tried everything I possibly can and this has to be
> at least the tenth sick call I have put in and  nothing has helped. Please

10

> call me to dispensary so we can figure something out. Very sorry about
> all this, but I really just need your help.

34. In response to the "Farrington's" December 10, 2015 Inmate Request, he received an answer from "Unknown Correctional Officers" and/or "Unknown Medical Providers of PrimeCare," which stated:

> All of your results from the hospital were negative and you are
> receiving Naproxen and Tylenol. No further follow-up is needed.

35. On or about December 21, 2015, despite using crutches to alleviate pressure on his left lower extremity, "Farrington" was caused to fall again when his left leg gave away. Upon falling, he was unable to get off the floor because of the pain in his left lower extremity. After his fall, he was examined by Mark DiCicco, RN, who noted that there was swelling and edema present from the left knee to the left ankle and it was further observed that "Farrington" had loss of range of motion due to the swelling and pain in his left lower extremity. The examination was reviewed and approved by "Gessner" on December 22, 2015. She did not order tests, laboratory studies, radiological studies, or referrals to outside medical facilities.

36. On December 28, 2015, "Farrington" was seen in the dispensary for pain and swelling in his left knee and thigh and was examined by an unknown nurse. It was noted upon examination that the swelling ran from his left thigh to his toes. "Farrington's" left lower extremity was also positive for signs of pitting edema and he demonstrated decreased range of motion and weakness in this left lower extremity. "Farrington" requested an MRI during the evaluation and stated he would pay for it himself because he felt the situation was urgent. "Gradinette" ordered a repeat knee x-ray, hip x-ray, a Motrin prescription and a prescription for

11

Tylenol 3 tabs, as well as, a peripheral venous ultrasound of the left lower extremity to be done within 24 hrs. "Gradinette" did not follow-up with the ordering of the peripheral venous ultrasound, which she had recommended be done.

37.     On December 31, 2015, "Gessner" sent "Farrington" to the "Hospital" for a MRI of his left lower extremity, which was performed at approximately 10:30 am. The results of the MRI showed a markedly abnormal femur which, was suspicious for the bone infection, osteomyelitis.

38.     The results of the December 31, 2015 MRI were called to a nurse at "Jail" at 12:30 pm that day and the corresponding MRI report was faxed to "Jail". The MRI report faxed to "Jail" recommended further x-rays and a MRI of the left femur for differential diagnosis between infection, neoplasm with associated inflammation or a stress related fracture. The MRI results and recommendations were also discussed with "Gessner" on December 31, 2015.

39.     Between December 1, 2015 and when "Farrington" was hospitalized at "Hospital" on January 5, 2015, "Gessner," "Gradinette," "Wioczewski," "Unknown Medical Providers of PrimeCare" and "Unknown Correctional Officers" were aware that "Farrington" could no longer walk, bear weight on his left leg, that his left leg was stuck in a flexed position, and that "Farrington" could have been suffering from an infection in his leg.

40.     Between December 31, 2015 and January 4, 2016, "Gessner," "Gradinette," "Wioczewski," and "Unknown Medical Providers of PrimeCare" ignored the recommendation by the radiologist at "Hospital" to have further evaluation of "Farrington's" left femur by x-rays and MRI.

41.     On January 4, 2016, "Gessner" sent "Farrington" to "Hospital" for the

12

recommended follow-up MRI which, was performed and was suspicious for distal femur osteomyelitis of the left lower extremity. It was noted that femur showed a markedly abnormal exam with edema, fluid, abnormal marrow signal enhancement of the portions of the mid shaft, periosteal new bone and small areas or rim enhancement in the deep anterior mid thigh shaft tissue. "Farrington" was sent back to "Jail" and the MRI results were sent to "Jail" where "Gradinette" discussed the results with "Farrington," but did not make immediate arrangements to transfer him back to "Hospital."

42.     On January 5, 2016, "Farrington" was transferred from "Jail" back to "Hospital" where he was subsequently admitted. Various laboratory studies were done at "Hospital," which demonstrated "Farrington" had an elevated white blood cell count. "Farrington" underwent consults with orthopedics and infectious disease and was started on the IV antibiotics, vancomycin, cefepime, and the pain medication, dilaudid.

43.     On January 6, 2016, Interventional Radiology was consulted and "Farrington" had a bone biopsy which, ultimately tested positive for MRSA and confirmed the diagnosis of osteomyelitis. It was noted by orthopedics that the damage to "Farrington's" left femur was so severe and extensive, amputation was a possibility.

44.     On January 8, 2016, "Farrington" was paroled by the "County" while still admitted to "Hospital."

45.     Due to the severity of the left lower extremity infection, "Farrington" was transferred from "Hospital" on January 9, 2016, to Thomas Jefferson University Hospital for surgery and further treatment.

46.     On January 11, 2016, "Farrington" underwent saucerization of the left femur,

13

irrigation and debridement of the left femur and arthrotomy and lavage of the left knee to treat

his diagnoses of osteomyelitis of the left femur and septic arthritis of the left knee.

## COUNT I

## PLAINTIFF, MICHAEL FARRINGTON v. DEFENDANT, COUNTY OF BUCKS AND BUCKS COUNTY CORRECTIONAL FACILITY
## DELIBERATE INDIFFERENCE TO THE NEED OF MEDICAL CARE AND THE DENIAL OF MEDICAL ATTENTION UNDER THE FOURTEENTH AMENDMENT

47.    The allegations contained previously are incorporated herein as though fully set

forth at length.

48.    The "County" and "Jail" were deliberately indifferent to the medical needs of

inmates by:

        a)    Failing to provide prompt and appropriate medical evaluation of inmate

             medical complaints;

        b)    Failing to have a system which would evaluate and  recognize the

             significance of inmates' prior medical history when evaluating inmate

             medical complaint;

        c)    Failing to have a adequate system in place to evaluate when inmates need

             consultation with a medical specialist;

        d)    Failing to have an adequate system in place to evaluate when an inmate's

             medical condition constitutes a medical emergency;

        e)    Failing to have a policy, procedure, and/or protocol in place for monitoring

             chronic medical conditions;

        f)    Failing to have an adequate policy, procedure, and/or protocol in place for

             determining when labs, tests, or radiological services are needed to

14

evaluate an inmates persistent medical complaints;

g)      Failing to have an adequate policy, procedure, and/or protocol in place for reviewing inmate requests for medical treatment, including but not limited to, requests to see a specialist, as well as requests for diagnostic testing for a medical condition;

h)      Failing to have an adequate policy, procedure, and/or protocol in place for following up on recommendations of a radiologist after a radiological report is received; and

i)      Failing to have a policy, procedure, and/or protocol in place for determining a differential diagnosis based on inmate medical complaints.

49.      The failure of "County" and "Jail," to enact the policies, procedures, and/or protocol constitutes the denial to "Farrington" of his constitutionally protected civil rights and deliberate indifference to his right to medical attention resulting in "Farrington" experiencing pain, suffering and exacerbation of his left lower extremity condition which could have been prevented earlier.

### COUNT II

**PLAINTIFF, MICHAEL FARRINGTON v. UNKNOWN CORRECTIONAL OFFICERS OF BUCKS COUNTY JAIL SYSTEM DELIBERATE INDIFFERENCE TO THE NEED OF MEDICAL CARE AND THE DENIAL OF MEDICAL ATTENTION UNDER THE FOURTEENTH AMENDMENT**

50.      The allegations contained previously are incorporated herein as though fully set forth at length.

51.      The "Unknown Correctional Officers of Jail" between October 16, 2015 and January 4, 2016 were agents, servants, workmen, employees, and/or ostensible agents of

15

"County" acting within the scope of their employment and on the business of "County."

52.     At all times relevant between October 16, 2015 and January 4, 2016, "Unknown Correctional Officers of Prison" were aware that "Farrington" was suffering from consistent pain in his left lower extremity which, produced a progressive limp throughout November, 2015 and by December 5, 2015 had rendered him unable to bear weight on his left lower extremity, walk, caused his left leg to be in a constant flexed position, and knew of the possibility that he was suffering from an infection.

53.     At all times relevant, between October 16, 2015 and January 4, 2016, "Unknown Correctional Officers of Jail" were aware that "Farrington" had fallen on several occasions as a result of his lower left leg pain, weakness and instability.

54.     At all times relevant, between October 16, 2015 and January 4, 2015, "Unknown Correctional Officers of Jail" deliberately ignored "Farrington's" symptoms, complaints, potential medical conditions, as well as, his requests for medical treatment.

55.     The conduct of "Unknown Correctional Officers" constitutes deliberate indifference to the medical needs of "Farrington" thus, violating his civil rights under the Fourteenth Amendment, causing "Farrington" to experience pain, suffering, and exacerbation of his left lower extremity condition which could have been prevented earlier.

## COUNT III

### PLAINTIFF, MICHAEL FARRINGTON v. PRIMECARE MEDICAL, INC. DELIBERATE INDIFFERENCE TO THE NEED OF MEDICAL CARE AND THE DENIAL OF MEDICAL ATTENTION UNDER THE FOURTEENTH AMENDMENT

56.     The allegations contained previously are incorporated herein as though fully set forth at length.

16

57.     At all times relevant hereto, there existed a contract between "County" and "PrimeCare" whereby "PrimeCare" provided at "Jail" on behalf of "County," all "Jail" medical and mental health services to inmates, including but not limited to, intake evaluations, mental health evaluations, substance abuse evaluations, medical treatment evaluations, transfers to outside medical facilities for further intensive treatment and/or evaluations, prompt and appropriate medical treatment for inmates with medical complaints, and following up on recommendations by outside medical specialists.

58.     The implementation of the previously mentioned contract between "County" and "PrimeCare" at "Jail" required that "PrimeCare" have in place policies, procedures and/or protocol at "Jail" in order to meet the contract requirements.

59.     "PrimeCare" was deliberately indifferent to the medical needs of inmates by:

    a)      Failing to provide prompt and appropriate medical evaluation of inmate medical complaints;

    b)      Failing to have a system which would evaluate and  recognize the significance of inmates' prior medical history when evaluating inmate medical complaints;

    c)      Failing to have a adequate system in place to evaluate when inmates need consultation with a medical specialist;

    d)      Failing to have an adequate system in place to evaluate when an inmate's medical condition constitutes a medical emergency;

    e)      Failing to have a policy, procedure, and/or protocol in place for monitoring chronic medical conditions;

17

f)      Failing to have an adequate policy, procedure, and/or protocol in place for determining when labs, tests, or radiological services are needed to evaluate an inmates persistent medical complaints;

g)      Failing to have an adequate policy, procedure, and/or protocol in place for reviewing inmate requests for medical treatment, including but not limited to, requests to see a specialist, as well as requests for diagnostic testing for a medical condition;

h)      Failing to have an adequate policy, procedure, and/or protocol in place for following up on recommendations of a radiologist after a radiological report with recommendations is received; and

i)      Failing to have a policy, procedure, and/or protocol in place for determining a differential diagnosis based on inmate medical complaints.

60.     The failures of "PrimeCare" to enact the previously described policies, procedures, and/or protocols constitute the denial to "Farrington" of his constitutionally protected civil rights and deliberate indifference to his right to medical attention, resulting in "Farrington" experiencing pain, suffering and exacerbation of his left lower extremity condition which could have been prevented earlier.

## COUNT IV

### PLAINTIFF, MICHAEL FARRINGTON v. PRIMECARE MEDICAL, INC. CORPORATE LIABILITY

61.     The allegations contained previously are incorporated herein as though fully set forth at length.

62.     At all times relevant hereto, there existed a contract between "County" and

18

"PrimeCare" whereby "PrimeCare" provided at "Jail" on behalf of "County" all "Jail" medical

and mental health services to inmates, including but not limited to, intake evaluations, mental

health evaluations, substance abuse evaluations, substance abuse evaluations, medical treatment

evaluations, transfer to outside medical facilities for further intensive treatment and/or

evaluations, prompt and appropriate medical treatment for inmates with medical complaints, and

following up on recommendations by outside medical specialists.

      63.    The implementation of the previously mentioned contract between "County" and

"PrimeCare" at "Jail" required that "PrimeCare" have in place policies, procedures and/or

protocol at "Jail in order to meet the contract requirements as follows:

               a)      Failing to provide prompt and appropriate medical evaluation of inmate
                        medical complaints;

               b)      Failing to have a system which would evaluate and  recognize the
                        significance of inmates' prior medical history when evaluating inmate
                        medical complaint;

               c)      Failing to have a adequate system in place to evaluate when inmates need
                        consultation with a medical specialist;

               d)      Failing to have an adequate system in place to evaluate when an inmate's
                        medical condition constitutes a medical emergency;

               e)      Failing to have a policy, procedure, and/or protocol in place for monitoring
                        chronic medical conditions;

                f)      Failing to have an adequate policy, procedure, and/or protocol in place for
                        determining when labs, tests, or radiological services are needed to

evaluate an inmates persistent medical complaints;

g) Failing to have an adequate policy, procedure, and/or protocol in place for reviewing inmate requests for medical treatment, including but not limited to, requests to see a specialist, as well as requests for diagnostic testing for a medical condition; and

h) Failing to have an adequate policy, procedure, and/or protocol in place for following up on recommendations of a radiologist after a radiological report is received.

64. The negligence and carelessness of "PrimeCare" in failing to enact the previously described policies, procedures, and/or protocols caused "Farrington" to experience pain, suffering and exacerbation of his left lower extremity condition which could have been prevented earlier.

## COUNT V

### PLAINTIFF, MICHAEL FARRINGTON v. PRIMECARE MEDICAL, INC.
### VICARIOUS LIABILITY

65. The allegations contained previously are incorporated herein as though fully set forth at length.

66. At all time relevant hereto, "At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were agents, servants, workmen, employees, and/or ostensible agents of "PrimeCare" acting within the course and scope of their employment and on the business of "PrimeCare."

67. The negligence and carelessness of "Gessner," "Wioczewski, "Gradinette" and

20

"Unknown Medical Providers of PrimeCare," resulted in "Farrington" suffering damages hereinafter more fully described.

## COUNT VI

### PLAINTIFF, MICHAEL FARRINGTON v. DEFENDANTS, VICTORIA GESSNER, M.D., KEN WIOCZEWSKI, D.O., BRITTANIE GRADINETTE, PA-C, AND UNKNOWN MEDICAL PROVIDERS OF PRIMECARE MEDICAL, INC. DELIBERATE INDIFFERENCE TO THE NEED OF MEDICAL CARE AND THE OF MEDICAL ATTENTION UNDER THE FOURTEENTH AMENDMENT

68.     The allegations contained previously are incorporated herein as though fully set forth at length.

69.     At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were fully aware of "Farrington's" previous history of IV drug use, cellulitis, MRSA, and endocarditis, all of which demonstrated a predisposition and increased susceptibility to infectious processes.

70.     At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were fully aware of "Farrington's" left lower extremity pain, swelling, edema, loss of range of motion, and inability to walk as a result of the aforementioned symptoms and thus, were deliberately indifferent when they failed to adequately treat his condition, note the severity of the progression of his condition, and failed to seek prompt medical evaluation of the condition.

71.     "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare," were deliberately indifferent to the medical needs of "Farrington"  by:

        a)      Failing to consider the significance of "Farrington's" prior history of IV

21

drug use, cellulitis, MRSA and endocarditis when evaluating and treating "Farrington's" persistent complaints of lower left extremity pain, swelling, edema, decreased range of motion, and inability to walk;

b)      Denying "Farrington's" requests to be transferred to an outside medical facility for specialized treatment;

c)      Failing to send "Farrington" to a hospital for prompt treatment of his continued complaints of left lower extremity pain, swelling, edema, decreased range of motion, and inability to walk;

d)      Failing to provide, recommend or request appropriate labs, tests, radiological exams, and specialist consultations within a timely fashion;

e)      Failing to appropriately treat the severity and progression of "Farrington's" left lower extremity complaints of pain, swelling, edema, decreased range of motion, and inability to walk;

f)      Failing to promptly follow-up with the recommendations of a radiologist which, indicate the potential for a severe and life threatening situation; and

i)      Failing to consider an infectious process as part of their differential diagnosis when treating "Farrington's" left lower extremity pain and swelling.

72.     The conduct of "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare," constitutes deliberate indifference to the medical needs of "Farrington" thus, violating his civil rights under the Fourteenth Amendment, causing "Farrington" to experience pain, suffering, and exacerbation of his left lower extremity condition which could

22

have been prevented earlier.

## COUNT VI I

### PLAINTIFF, MICHAEL FARRINGTON v. DEFENDANTS, VICTORIA GESSNER, M.D., KEN WIOCZEWSKI, D.O., BRITTANIE GRADINETTE, PA-C, AND UNKNOWN MEDICAL PROVIDERS OF PRIMECARE MEDICAL, INC. NEGLIGENCE AND CARELESSNESS

73.     The allegations contained previously are incorporated herein as though fully set forth at length.

74.     At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were agents, servants, workmen, employees, and/or ostensible agents of "PrimeCare" acting within the course and scope of their employment and on the business of "PrimeCare."

75.     At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were fully aware of "Farrington's" left lower extremity pain, swelling, edema, loss of range of motion, and inability to walk as a result of the aforementioned symptoms and failed to adequately treat his condition, note the severity of the progression of his condition, and failed to seek prompt medical evaluation of the condition.

76.     At all times relevant hereto, namely between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare" were fully aware of "Farrington's" previous history of IV drug use, cellulitis, MRSA, and endocarditis, all of which demonstrated a predisposition and increased susceptibility to infectious processes.

77.     Between October 16, 2015 and January 4, 2016, "Gessner," "Wioczewski,

23

"Gradinette" and "Unknown Medical Providers of PrimeCare" were negligent and careless in their conduct directed toward "Farrington" as follows:

a) Failing to consider the significance of "Farrington's" prior history of IV drug use, cellulitis, MRSA and endocarditis when evaluating and treating "Farrington's" persistent complaints of lower left extremity pain, swelling, edema, decreased range of motion, and inability to walk;

b) Denying "Farrington's" requests to be transferred to an outside medical facility for specialized treatment;

c) Failing to send "Farrington" to a hospital for prompt treatment of his continued complaints of left lower extremity pain, swelling, edema, decreased range of motion, and inability to walk;

d) Failing to provide, recommend or request appropriate labs, tests, radiological exams, and specialist consultations within a timely fashion;

e) Failing to appropriately treat the severity and progression of "Farrington's" left lower extremity complaints of pain, swelling, edema, decreased range of motion, and inability to walk;

f) Failing to consider an infectious process in Farrington's differential diagnosis; and

g) Failing to promptly follow-up with the recommendations of a radiologist which, indicate the potential for a severe and life threatening situation.

78.   The negligence and carelessness of "Gessner," "Wioczewski, "Gradinette" and "Unknown Medical Providers of PrimeCare," as previously alleged resulted in "Farrington"

24

experiencing pain, suffering and exacerbation of his left lower extremity condition which could have been prevented earlier.

## COUNT VIII

## PLAINTIFF, MICHAEL FARRINGTON v. DEFENDANT THOMAS P. DIENNA, D.O. AND UNKNOWN MEDICAL PROVIDERS OF DOYLESTOWN HOSPITAL, INC. NEGLIGENCE AND CARELESSNESS

79.     The allegations contained previously are incorporated herein as though fully set forth at length.

80.     At all times relevant hereto, namely on or about December 1, 2015, "DiEnna" and "Unknown Medical Providers of Hospital" were agents, servants, workmen, employees and/or ostensible agents of "Hospital" acting within the course and scope of his employment and on the business of "Hospital."

81.     At all times relevant hereto, namely on or about December 1, 2015, "DiEnna"and "Unknown Medical Providers of Hospital" were fully aware of "Farrington's" previous history of IV drug use, cellulitis, MRSA, and endocarditis, all of which demonstrated a predisposition and increased susceptibility to infectious processes.

82.     On or about December 1, 2015, "DiEnna" and "Unknown Medical Providers of Hospital" were negligent and careless in their conduct directed toward "Farrington" as follows:

        a)     Failing to consider "Farrington's" past medical history of IV drug use, cellulitis, MRSA, and endocarditis in determining a differential diagnosis;

        b)     Failing to consider an infectious process as the cause of "Farrington's" pain and swelling to his left lower extremity;

        c)     Failing to order tests to check for the possibility of an infectious process;

        d)     Failing to order an orthopedic consult for "Farrington's" left lower

25

extremity pain and swelling; and

e)     Failing to consider an infectious process when making a differential

diagnosis as to the cause of "Farrington's" left lower extremity pain,

swelling, and decreased range of motion.

83.     The negligence and carelessness of "DiEnna," and "Unknown Medical Providers

of Hospital" as previously alleged resulted in "Farrington" experiencing pain, suffering and

exacerbation of his left lower extremity condition which could have been prevented earlier.

COUNT IX

PLAINTIFF, MICHAEL FARRINGTON v. DEFENDANT,<br>DOYLESTOWN HOSPITAL, INC.<br>VICARIOUS LIABILITY

84.     The allegations contained previously are incorporated herein as though fully set

forth at length.

85.     At all times relevant hereto, "DiEnna" and "Unknown Medical Providers of

Hospital" were agents, servants, workmen, employees and/or ostensible agents of "Hospital,"

acting within the course and scope of their employment and on the business of "Hospital."

86.     "Hospital" is vicariously liable for the acts or failure to act which constitutes the

negligence and carelessness of "DiEnna" and "Unknown Medical Providers of Hospital" as

previously alleged in Count VII.

87.     The conduct of "Hospital" through its agents, servants, workmen, employees

and/or ostensible agents as previously alleged caused "Farrington"suffering damages suffering

damages hereinafter more fully described.

26

## COUNT X
## DAMAGES

88.    The allegations contained previously are incorporated herein as though fully set forth at length.

89.    As a result of the conduct previously alleged as to all Defendants, "Farrington" developed a severe and progressive osteomyelits bone infection and MRSA which, caused him to undergo extensive surgical intervention, permanent scarring, severe and permanent shock to his nervous system, as a result of which he has suffered, and may, and probably will in the future, continue to suffer great pain, inconvenience, embarrassment, mental anguish, humiliation, agony, and he has been and probably will be in the future hindered from performing or tending to his usual daily duties to his great financial damage and loss.

90.    "Farrington" further avers that as a result of his injuries he has suffered a loss of his earning capacity and an impairment of his earning capacity and that this impairment will continue permanently into his future.

91.    "Farrington" further avers that as a result og the foregoing, he has incurred medical, diagnostic testing, and medication expenses in an effort to treat and cure himself and will be required to incur the same expenses for an indefinite time in the future.

92.    "Farrington" further avers that as a result of the foregoing, he has suffered a loss of life's pleasures.

### ATTORNEY FEES

93.    It was necessary for "Farrington," to hire the under-signed attorney to file this lawsuit. Upon judgment, "Farrington" Is entitled to an award of attorney fees and costs under 42 U.S.C. §1988 (b).

27

## PRAYER

94.     The allegations contained previously are incorporated herein as though fully set forth at length.

85.     **WHEREFORE**, Plaintiff, Michael Farrington, demands judgment against the defendants individually, jointly and/or in the alternative for compensatory damages, punitive damages, attorney fees, interest and costs of suit in an amount in excess of $150,000 and such relied as this Court may deem fit.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

96.     Plaintiff, Michael Farrington, asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with the Federal Rule 38, a trial by jury on all issues.

Respectfully submitted,

OXMAN GOODSTADT KURITZ, P.C.

HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff, Michael Farrington

Date: 12/29/17

28

## V E R I F I C A T I O N

The undersigned hereby verifies that the within document is based on first-hand information and on information furnished to counsel and obtained by him in the course of this lawsuit. The language of the document is that of counsel and not of the affiant. To the extent that the contents of the document are based on information furnished to counsel and obtained by him during the course of this lawsuit, affiant has relied upon counsel in taking this verification. All statements are founded upon reasonable belief. This verification is made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

_____
PLAINTIFF

## CERTIFICATE OF MERIT
## AS TO DEFENDANT, PRIMECARE MEDICAL, INC.

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael Farrington, certify that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Complaint in Civil Action, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael Farrington;

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael Farrington, certify that the claim that this Defendant deviated from acceptable professional standards is also based upon allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of this Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael Farrington.

OXMAN GOODSTADT KURITZ, P.C.

Date: 12/29/17

BY: _____
HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff

**CERTIFICATE OF MERIT**
**AS TO DEFENDANTS, VICTORIA GESSNER, M.D., KEN WIOCZEWSKI, D.O.,**
**BRITTANIE GRADINETTE, PA-C, AND UNKNOWN MEDICAL PROVIDERS OF**
**PRIMECARE MEDICAL, INC.**

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael Farrington, certify that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by these defendants in the treatment, practice or work that is the subject of the Complaint in Civil Action, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael Farrington;

OXMAN GOODSTADT KURITZ, P.C.

Date: 12|29|17

BY: _____
HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff

## CERTIFICATE OF MERIT
## AS TO DEFENDANT, DOYLESTOWN HOSPITAL, INC.

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael Farrington, certify that the claim that this Defendant deviated from acceptable professional standards is also based upon allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of this Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael Farrington.

OXMAN GOODSTADT KURITZ, P.C.

Date: 12/28/17

BY: _____
    HARRY J. OXMAN, ESQUIRE
    Attorney for Plaintiff

**CERTIFICATE OF MERIT**
**AS TO DEFENDANTS, THOMAS P. DIENNA, D.O. AND UNKNOWN MEDICAL**
**PROVIDERS OF DOYLESTOWN HOSPITAL, INC.**

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael Farrington, certify that an

appropriate licensed professional has supplied a written statement to the undersigned that there is

a basis to conclude that the care, skill or knowledge exercised or exhibited by these defendants in

the treatment, practice or work that is the subject of the Complaint in Civil Action, fell outside

acceptable professional standards and that such conduct was a cause in bringing about the harm

suffered by the Plaintiff, Michael Farrington;

OXMAN GOODSTADT KURITZ, P.C.

Date: 12/29/17

BY: _____
HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff