**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL FARRINGTON,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF BUCKS, PA et al.,** | : | **No. 17-5826** |
| *Defendants.* | : | |

# M E M O R A N D U M

PRATTER, J.                                                                    MAY 16, 2018

By December 2015, Michael Farrington, a prisoner in Bucks County, could no longer
walk on his own. He had been to the prison doctor seven times complaining of leg pain but was
prescribed nothing more than over-the-counter pain medication. On December 10, he wrote the
following plea to the prison and medical staff: "Please! I am literally begging you at this point
for some help. Been going on for nearly 2 months. No sign of it getting better, I have tried
everything I possibly can and this has to be at least the tenth sick call I have put in and nothing
has helped."

The doctors' reply: "No further follow-up is needed."

One month later, Mr. Farrington was diagnosed with MRSA and nearly lost his leg. All
parties agree that Mr. Farrington's complaint states a viable claim under § 1983 for Eighth
Amendment violations against the medical professionals who treated, or failed to treat, him
during his prison stay. The pending motions question whether allegations of systemic inaction
across multiple medical professionals state a plausible claim of supervisory liability under

§ 1983 against the private hospital and the County. The Court concludes that the complaint states a claim of supervisory and *Monell* liability and denies the motions to dismiss.

## FACTUAL BACKGROUND

In April 2015, while incarcerated in Bucks County, Mr. Farrington developed a MRSA infection, which had abated by the summer. He was an IV drug user and had a history of endocarditis. On October 16, 2015, during a health assessment, Mr. Farrington complained of left knee pain, which ultimately turned out to be a recurrence of the MRSA infection. He was prescribed over-the-counter pain medication. This episode was the first of seven visits over the next six weeks in which he went to the correctional facility's hospital complaining of left knee pain. Each time, the medical professionals noted that he had swelling and decreased range of motion. Each time, the medical team prescribed over-the-counter pain medication or ice and discharged him without any additional tests. During this period, Mr. Farrington developed a limp from the pain.

On December 1, 2015, Mr. Farrington fell while out on work release. He was taken to a local hospital, where his symptoms prompted the doctors to administer an ultrasound and take x-rays. He was prescribed a knee immobilizer, crutches, and over-the-counter pain medication, and was told to seek out an orthopedic specialist if the pain persisted. From this point until he was released on parole in 2016, Mr. Farrington could no longer walk on his own.

Three days later, Mr. Farrington told the medical staff at the correctional facility that "something was seriously wrong with his leg" and requested to be taken to orthopedic professionals. The correctional facility declined to refer him. One week later, on December 10, 2015, Mr. Farrington made an inmate request in which he wrote:

> I am still in pain. Really just need to figure something out. Went to ER 11 days ago and Dr. said if it doesn't get better in a week to either go back or see Ortho. Please! I am

> literally begging you at this point for some help. Been going on for nearly 2 months. No sign of it getting better, I have tried everything I possibly can and this has to be at least the tenth sick call I have put in and nothing has helped. Please call me to dispensary so we can figure something out. Very sorry about all this, but I really just need your help.

In response to this request, he received a letter from the medical staff that said: "All of your results from the hospital were negative and you are receiving [over-the-counter pain medication.] No further follow-up is needed."

Mr. Farrington fell again on December 21, 2015. At this point, the swelling in his leg had spread from his knee to his ankle. The medical professionals noted his worsening symptoms but ordered no new tests. On December 28, after the swelling had spread to his entire left leg and foot, Mr. Farrington again went to the medical office, where the physician assistant examining him ordered an ultrasound and x-ray to be done within 24 hours. It is unclear whether the tests were performed.

Three days later, on December 31, 2015, Mr. Farrington was sent by a new doctor to a hospital for an MRI. Later that same day, the doctor from the outside hospital recommended a follow-up focused MRI. On January 4, 2016, Mr. Farrington was sent for a follow-up MRI and admitted to the hospital the next day. Ultimately, after a series of tests, Mr. Farrington was diagnosed with MRSA and transferred to Jefferson Hospital, where he underwent multiple surgeries to save his leg from amputation.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions").

**DISCUSSION**

To state a claim under § 1983, a plaintiff must show that the defendant was a person who, under the color of state law, caused a deprivation of constitutional rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Here, Mr. Farrington alleges supervisory liability for Bucks County and PrimeCare Medical for deprivation of his Eighth Amendment rights. The parties agree that Mr. Farrington's complaint states a claim that he suffered a deprivation of his rights, and that the defendants were acting under the color of state law.[1] The question here focuses on causation. Because the supervisors in this case were not the ones who treated Mr. Farrington, causation questions require a discussion of supervisory liability.

## I.      Eighth Amendment Supervisory Liability

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In this context, Mr. Farrington must show that (1) he had a serious medical need and (2) officials were

---

[1] All parties agree that PrimeCare Medical, despite being a private medical provider for the prison, was acting under the color of state law.

indifferent to that need, or intentionally refused to treat him. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Under the Eighth Amendment, only "'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." *White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990) (quoting *Estelle*, 429 U.S. at 103).

"Allegations of medical malpractice are not sufficient to establish a Constitutional violation." *Spruill*, 372 F.3d at 235. "'Mere disagreement as to the proper medical treatment' is also insufficient." *Id.* (citing *Monmouth Cty. Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Monmouth Cty.*, 834 F.2d at 346 (internal quotations and citations omitted). The instant motions deal only with the supervisors of the alleged wrongdoers. Not only must Mr. Farrington show that the individual medical professionals deprived him of his rights (which all sides concede he has plausibly alleged), but he must also show that the County and PrimeCare Medical may be liable as supervisors.

For a county or supervisor to be held liable under § 1983, there must be either an official act or a custom that caused the deprivation of civil rights. *See Rizzo v. Goode*, 423 U.S. 362, 364 (1976); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). In *Monell*, the Court rejected, as a categorical matter, the concept of *respondeat superior* liability in § 1983. Rather, there must be a "decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 659. As the Third Circuit Court of Appeals explained, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).[2]

For supervisors or policymakers to be liable, their actions must cause the deprivation of civil rights. In a straightforward application, a supervisor would be liable under § 1983 for an Eighth Amendment deprivation if the doctor who neglected the patient was acting pursuant to a stated policy. But no affirmative policy is required to show liability. "Deliberate indifference to the plight of the person deprived" will also suffice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). To meet the deliberate indifference standard, a plaintiff must plead that (1) there is an unreasonable risk of a deprivation of rights, (2) the supervisor or municipality was aware of that risk, (3) the supervisor or municipality was indifferent to that risk, and (4) the failure to enact policies regulating that risk caused a deprivation of rights. *Id.* Only then can a policymaker's inaction be said to cause a plaintiff's deprivation of rights under § 1983.

Mr. Farrington argues that the complaint sufficiently alleges that (1) there was a policy to give inmates lower medical care than necessary or (2) the policy that existed inadequately governed the medical care necessary for the prisoners, which would amount to deliberate indifference. The Court finds that Mr. Farrington has plausibly alleged a policy to give inmates lower medical care that necessary, and alternatively, that the County or PrimeCare Medical were

---

[2] As lower courts analyzed *Rizzo* and *Monell*, courts began to interpret "supervisory liability" and "municipal liability" differently under § 1983. For supervisory liability to attach, a plaintiff must either (1) "plead that [defendants] 'directed others to violate her rights,'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d at 586), or (2) plead that "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Stoneking,* 882 F.2d at 725. Mr. Farrington focuses on the second theory here. Municipal liability, on the other hand, attaches only when an injury is "inflicted by 'execution of a government's policy or custom.'" *Santiago*, 629 F.3d at 135 (quoting *Monell*, 436 U.S. at 694). In this instance, the distinction is immaterial because Mr. Farrington alleges that both the County and PrimeCare Medical had inadequate policies or customs to care for prisoners. Therefore, the Court will use the terms "supervisory" and "*Monell*" liability interchangeably.

deliberately indifferent to the medical needs of prisoners. The Court addresses each argument in turn.[3]

## A. Explicit Custom or Policy

Mr. Farrington first claims that the repeated lack of adequate treatment from multiple medical professionals shows that PrimeCare Medical had a custom or policy that led to giving him a lower standard of medical care in violation of the Eighth Amendment. Mr. Farrington saw at least four different medical professionals from PrimeCare Medical, and all of them dismissed his injuries with minimal treatment. Perhaps one doctor repeatedly misdiagnosing someone's injury could be written off as individual negligence, but four professionals behaving the same way is indicative of a pattern. Pattern can evince custom, and a "pattern of violations" support a "claim that the [medical provider] had an unwritten custom of denying medical care" to prisoners. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 398 (1989) (O'Connor, J., concurring in part and dissenting in part).

There are two inferences the Court can draw from this pattern evidence. The first is that each medical professional made the correct diagnoses based on the facts presented them. For example, maybe someone with a swollen knee usually requires only over-the-counter pain medication, and most doctors would prescribe as much even after multiple visits. This inference would clearly be permissible and would not evince any negative policy on the part of PrimeCare Medical.

_____

[3] Mr. Farrington's claim covers two different time periods, separated by the moment in December 2015 when his injury took a turn for the worst. Beginning in December, Mr. Farrington could no longer walk without crutches and was referred to a specialist. Although the defendants claimed that the distinction between pre- and post-December action was crucial, the Court finds it irrelevant. As a practical matter, if it is plausible that there was a policy in December, it is not unlikely that the same policy existed just before December. Given that there is no evidence or allegation of a change in policy, the Court will treat both time periods as one.

However, the alternative inference the Court can draw is that these medical professionals all made the same incorrect diagnosis pursuant to some policy. For example, PrimeCare Medical could have had a custom to avoid sending prisoners for MRIs unless the situation was dire, or a policy to minimize or skip costly tests in general. Three facts support the plausibility of this inference.

First, Mr. Farrington had a very serious illness, yet every medical professional at the prison missed it. This fact makes it more plausible that a policy led medical professionals to overlook these types of illnesses. Had even one of these medical professionals correctly diagnosed Mr. Farrington (or at least took the step to investigate even slightly more) his theory would lack any serious merit.

Second, once Mr. Farrington went to an outside hospital, his symptoms were immediately viewed by those doctors as very serious. These outside doctors performed x-rays, MRIs and ultrasounds, gave him a knee immobilizer and crutches. The prison hospital, in stark contrast, had simply prescribed over-the-counter pain medication.

Finally, PrimeCare Medical is a private entity, and its incentives are to enact policies that restrict services to save costs. Critiques of private prisons argue that prisons face incentives to restrict services to inmates to maximize profit and achieve low bids to local governments. *See* Barack Obama, *The President's Role in Advancing Criminal Justice Reform*, 130 HARV. L. REV. 811, 831 (2017) (for-profit prisons are "facilities that not only resulted in worse conditions for prisoners but were also found to be less safe and not to yield meaningful cost savings"); Michael J. Trebilcock & Edward M. Iacobucci, *Privatization and Accountability*, 116 HARV. L. REV. 1422, 1432 (2003) ("Another controversial area of government and private involvement that raises similar issues is prison management. If the purpose of managing a prison is twofold, to

incarcerate prisoners and to rehabilitate them, there is a danger that profit-maximizing private prison providers will not pursue the latter: relative to the cost of simply incarcerating inmates, it is expensive to rehabilitate them").

This pressure to cut costs applies equally to outsourced prison *medical* care. Decreasing expensive tests and MRIs, many of which cost thousands of dollars to administer, would reduce costs or otherwise lead to savings. This kind of concern about restriction of services is notably absent in conventional for-profit hospitals. Most hospitals have an incentive for quality care because they want to develop a reputation for quality medicine so they can continue to recruit clients and staff. Prison hospitals, on the other hand, have no such natural economic constraint. PrimeCare Medical has a fixed customer base regardless of its services; it enjoys a "captive audience" in a quite literal sense.

This constellation of facts plausibly points to a policy of inadequately administering the inmates' medical care. Without engaging in discovery and thereafter evaluating the evidence, it is impossible to know whether Mr. Farrington's mistreatment was the result of mere negligence, or something more. Therefore, the theory of an explicit policy is plausible under § 1983, and the claim against PrimeCare Medical may proceed.

### B. Deliberate Indifference

Mr. Farrington also brings a claim against both Bucks County and PrimeCare Medical for deliberate indifference. To meet the deliberate indifference standard, Mr. Farrington must plead that (1) he had a serious medical need and (2) officials were indifferent to that need. *Spruill*, 372 at 235. The same arguments supporting the existence of an explicit policy to restrict medical care (as outlined above) underlie Mr. Farrington's argument that PrimeCare Medical was deliberately indifferent. Mr. Farrington simply argues that PrimeCare's policy was inadequate to meet the

known medical needs of prisoners (deliberate indifference), which is similar to having an affirmative policy to restrict medical services (explicit policy). Given that the Court has already allowed the claims regarding an affirmative policy to proceed, the claim that there was an inadequate policy may proceed against PrimeCare Medical as well. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) ("Although the claim in *Sample* does not seem to be precisely the same as the plaintiffs' claim in the case at bar—*Sample* concerned whether a supervisor could be liable for a subordinate's Eighth Amendment tort while the plaintiffs here seem to claim that the supervisors committed their own Eighth Amendment violations by implementing defective policies—we do not think this difference material").

But Mr. Farrington's argument regarding Bucks County requires an extra analytical step. In contracting for medical services, Bucks County knows that contracting with subpar medical care providers would create an unreasonable risk of inadequate medical care. Therefore, the County must ensure that its private providers maintain a (constitutionally determined) minimum standard of medical care for these medical facilities. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical care to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988).

Should discovery reveal a deficient medical standard of care or policy, which the Court held above was plausible, it is also plausible that the deficiency is because Bucks County did not require PrimeCare to adhere to an adequate medical standard of care when contracting out these services. In an obvious example, if Bucks County contracted with a solo medical practitioner to treat thousands of inmates, it would constitute deliberate indifference because the County would know that a solo practitioner was ill-equipped to meet the medical needs of thousands of inmates.

Likewise, if the County entered into a contract with PrimeCare Medical with the knowledge that this company could not satisfy the minimum medical needs of the prison population, the County's decision could constitute deliberate indifference.

In other words, although Bucks County can delegate the medical care of inmates to a third party, it cannot delegate the determination of the minimum level of prisoners' medical care to a third party. The County is still responsible for ensuring that its private contractors do not violate prisoners' Eighth Amendment rights. Therefore, the Court finds that because the claims against PrimeCare Medical may proceed, the claims against Bucks County may also proceed.

## II.      Remaining Claims

**Punitive Damages.** PrimeCare Medical also moves to dismiss the punitive damages claim under § 1983. Punitive damages claims may proceed in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, given that the Court has already ruled that there is a plausible policy that is deliberately indifferent to Mr. Farrington's rights, the Court finds it plausible that the same policy would be "callously indifferent" to Mr. Farrington's rights. Therefore, the punitive damages claim can also proceed at this time.

**Attorney's Fees.** PrimeCare Medical also argues that attorney's fees are unavailable. Attorney's fees are available in § 1983 actions. *See* 42 U.S.C. § 1988(b). Given that the Court is allowing the claims under § 1983 to proceed, the Court also allows the attorney's fees claim to proceed.

**Wrongly Included Defendant.** Bucks County moves to dismiss Bucks County Correctional Facility, which is a subdivision that cannot be sued. This motion is unopposed and the Court grants the motion on this question.

**Vicarious Liability.** Mr. Farrington also brings a claim of vicarious liability, which all parties agree is unavailable under § 1983, so the Court dismisses that claim as well.

CONCLUSION

For the foregoing reasons the Court denies the motions to dismiss, with the exception of the dismissal of the Bucks County Correctional Facility and the claim of vicarious liability. An appropriate order follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE